**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Facsimile: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFF JANZEN, derivatively on behalf of Nominal Defendant FUTURE FINTECH GROUP INC., <br><br> Plaintiff, <br><br> v. <br><br> SHANCHUN HUANG, JING CHEN, MING YI, FUYOU LI, YING LI, JOHNSON LAU, and MINGJIE ZHAO, <br><br> Defendants, <br><br> and <br><br> FUTURE FINTECH GROUP INC., <br><br> Nominal Defendant. | Case No. <br><br><br><br> **DEMAND FOR JURY TRIAL** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Jeff Janzen ("Plaintiff"), by and through Plaintiff's undersigned attorneys, derivatively on behalf of Nominal Defendant Future FinTech Group Inc. ("Future FinTech" or the "Company"), brings this Verified Shareholder Derivative Complaint against Shanchun Huang ("Huang"), Jing Chen ("Chen"), Ming Yi ("Yi"), Fuyou Li, Ying Li, Johnson Lau ("Lau"), and

1

Mingjie Zhao ("Zhao") (collectively, the "Individual Defendants" and, together with Future FinTech, "Defendants") for and among other things, their breaches of fiduciary duties and violations of the federal securities laws.

Plaintiff's allegations are based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief, including a review of publicly available information, including filings by Future FinTech with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a shareholder derivative action brought against certain current and former Future FinTech officers and members of Future FinTech's Board of Directors (the "Board") that seeks to remedy wrongdoing committed by the Individual Defendants between March 10, 2020 and January 11, 2024, inclusive (the "Relevant Period").

2.    Future FinTech states that its business activities include "supply chain financial services and trading, asset management and cross-border money transfer services. The Company has also expanded into cryptocurrency mining and cryptocurrency market data and information service business."

3.    On February 28, 2019, the Company received a letter from NASDAQ notifying the Company that, because the closing bid price for the Company's common stock listed on NASDAQ was below $1.00 for 30 consecutive trading days, the Company no longer met the minimum bid price requirement for continued listing on NASDAQ.

4.      On March 4, 2020, the Company hired Defendant Huang to serve as its Chief Executive Officer ("CEO").

5.      Throughout the Relevant Period, the Individual Defendants misrepresented and failed to disclose that: (1) Company officers and directors, including Defendant Huang, unlawfully manipulated the price of Future FinTech stock; (2) Defendant Huang caused Future FinTech to lie to the SEC about the nature of Defendant Huang's ownership of Future FinTech stock; (3) Future FinTech understated its exposure to governmental legal proceedings; and (4) Future FinTech failed to disclose the unlawful measures Defendant Huang took to prop up the price of the Company's stock

6.      The truth emerged on January 11, 2024, when the SEC posted a press release on its website entitled "SEC Charges Future FinTech CEO Shanchun Huang With Fraud and Disclosure Failures." Attached to the press release was a complaint filed by the SEC against Defendant Huang, which alleged that Defendant Huang "manipulated the stock price of Future FinTech by buying hundreds of thousands of Future FinTech shares to artificially increase the company's stock price shortly before and after he became CEO in March 2020."

7.      On this news, the price of the Company's stock went down by $0.27, or over 20%, to close at $1.02 on January 12, 2024.

8.       In light of the Individual Defendants' misconduct, the Company and Defendants Huang, Chen, and Yi were named as defendants in a federal securities fraud class action lawsuit that is pending in the United States District Court for the District of New Jersey under the caption: *Labelle v. Future FinTech Group Inc.*, Case No. 2:24-cv-00247 (D.N.J.) (the "Securities Class Action.") The Securities Class Action has further subjected Future FinTech to the need to undertake internal investigations and the need to implement adequate internal controls, as well as

exposed the Company to massive class-wide liability.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), Section 20(a) of the Exchange Act (15 U.S.C. §78t(a)), Section 14(a) of the Exchange Act (15 U.S.C. §78u-4(f)) and rule 14a-9 promulgated thereunder (17 C.F.R. § 240.14a-9), and for contribution under Section 21D of the Exchange Act (15 U.S.C. §78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC. §1367(a).

11.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

13.     Plaintiff is a current shareholder of Future FinTech and has continuously held Future FinTech stock at all relevant times.

14.     Nominal Defendant Future FinTech is incorporated in Florida and its headquarters are located at Americas Tower; 1177 Avenue of The Americas, Suite 5100, New York, New York 10036. Future FinTech's common shares trade on the NASDAQ under the ticker symbol "FTFT".

15.     Defendant Huang has served as Future FinTech's CEO and as a Company director since March 2020. According to the proxy statement filed on Schedule 14A with the SEC on

October 13, 2023 (the "2023 Proxy Statement"), Defendant Huang received $1,405,001 and $336,001 in total compensation from the Company for the 2021 and 2022 fiscal years, respectively. Defendant Huang is named as a defendant in the Securities Class Action.

16.    Defendant Chen served as the Company's Chief Financial Officer ("CFO") from 2019 until November 2020. Defendant Chen also served as Vice President of Future FinTech from November 2020 to April 2023. Defendant Chen is named as a defendant in the Securities Class Action.

17.    Defendant Yi has served as the Company's CFO since November 2020.  According to the 2023 Proxy Statement, Defendant Yi received $104,200 and $90,000 in total compensation from the Company for the 2021 and 2022 fiscal years, respectively. Defendant Yi is named as a defendant in the Securities Class Action.

18.    Defendant Fuyou Li has served as a Company director since May 2015 and as Chairman of the Board since June 2021. Defendant Fuyou Li serves as a member of both the Company's Compensation Committee and its Audit Committee. According to the 2023 Proxy Statement, Defendant Fuyou Li received $18,000 in total compensation from the Company for the 2022 fiscal year.

19.    Defendant Ying Li has served as a Company director since June 2021.

20.    Defendant Lau has served as a Company director since December 2014. Defendant Lau serves as a member of the Company's Compensation Committee and as the Chair of its Audit Committee. According to the 2023 Proxy Statement, Defendant Lau received $25,000 in total compensation from the Company for the 2022 fiscal year.

21.    Defendant Zhao has served as a Company director since July 2020. Defendant Zhao serves as a member of both the Company's Compensation Committee and its Audit Committee.

According to the 2023 Proxy Statement, Defendant Zhao received $25,000 in total compensation from the Company for the 2022 fiscal year.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

22.     By reason of their positions as officers, directors, and/or fiduciaries of Future FinTech and because of their ability to control the business and corporate affairs of Future FinTech, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders.

23.     Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

24.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with the Company, each of the Defendants had access to adverse non-public information

about the financial condition, operations, sales and marketing practices, and improper representations of the Company.

25.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)    conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)    remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)    ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations;

and

(f)        ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

26.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

## THE CODE OF BUSINESS CONDUCT AND ETHICS

27.    Future FinTech maintain a Code of Business Conduct and Ethics (the "Code"). The Code requires that "[a]ll officers, key staff members, and members of the Board of Future FinTech . . . exercise the highest ethical standards of conduct and practice fundamental honesty at all times."

28.    The Code then explains that it was designed to promote:

- Honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;

- Full, fair, accurate, timely and understandable disclosure in the reports and documents the Company files with, or submits to, the Securities and Exchange Commission, as well as in other public communications made by or on behalf of the Company;

- Compliance with applicable governmental laws, rules and regulations;

- Prompt reporting to the appropriate person of violations of laws, rules, regulations, this Code and other Company policies; and

- Accountability for adherence to this Code.

29.    Under a section titled "Personal and Professional Integrity," the Code states that

"[a]ll staff, board members, and agents of Future FinTech" must:

- Act with integrity, including being honest and candid while still maintaining the confidentiality of the Company's information where required or in the Company's interests.

- Observe all applicable governmental laws, rules and regulations.

- Comply with the requirements of applicable accounting and auditing standards, as well as Company policies, in the maintenance of a high standard of accuracy and completeness in the Company's financial records and other business-related information and data.

  *      *      *

- Comply with policies and procedures established by the Company, including policy manuals, procedure manuals, safety manuals and employee handbooks.

- Adhere to a high standard of business ethics and not seek competitive advantage through unlawful or unethical business practices.

  *      *      *

- Refrain from taking advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair-dealing practice.

- Protect the assets of the Company and ensure their proper use.

## THE AUDIT COMMITTEE CHARTER

30.    The Company also maintains an Audit Committee Charter (the "Charter"). The

Charter states that the purpose of the Audit Committee is to "oversee the accounting and financial

reporting processes of Future FinTech." The Charter further delineates the following duties and

responsibilities of the Audit Committee:

- assisting the Board of Directors in fulfilling its responsibilities by reviewing: (i) the financial reports provided by the Company to the Securities and Exchange Commission ("SEC"), the Company's stockholders or to the general public, and (ii) the Company's internal financial and accounting controls;

- recommending, establishing and monitoring procedures designed to improve the quality and reliability of the disclosure of the Company's financial condition and results of operations;

- overseeing the appointment, compensation, and evaluation of the qualifications and independence of the Company's independent auditors;

- overseeing the Company's compliance with legal and regulatory requirements;

- overseeing the adequacy of the Company's internal controls and procedures to promote compliance with accounting standards and applicable laws and regulations;

## <u>SUBSTANTIVE ALLEGATIONS</u>

31.    The Relevant Period begins on March 10, 2020, when the Company issued a press release entitled "Future FinTech Announces Shanchun Huang as New CEO." The press release stated, in pertinent part, as follows:

> ***Mr. Huang has over 16 years of experience in the financial service and investment industry.*** He has provided financing solutions and advice for high-growth companies in China and successfully assisted 37 enterprises to complete fundraising or public offerings in China. Most recently, ***Mr. Huang served as the president of Wealth Index (Beijing) Fund Management Co., Ltd., which provides private equity fund management service, from March 2011 to March 2020 and president of Wealth Index (Beijing) International Investment Consulting Co., Ltd., which provides investment management and consulting services for non-securities related business, from August 2004 to March 2020.*** From May 2001 to June 2004, Mr. Huang was the vice president of Zhejiang Geely Holding Group Corporation, a global automobile company headquartered in Hangzhou, China. Mr. Huang graduated from Hefei Staff University of Science and Technology in July 1986 majoring in news collection and editing.

> Mr. Huang is also a prolific writer and has published four books in the finance and investment area in China. These books include How to Raise Money to Start a Business, the Road to Red Chips, Comparison and Research Among Global Capital Markets, and The Practice of Small and Medium Enterprises Listed Overseas and Hong Kong. Mr. Huang is the Knight Commander of Grace of the Order of Saint Lazarus of Jerusalem, and the first Grand Prior of the Grand Priory of China.

> "We are very pleased that Mr. Huang will be joining the team as our Chief Executive Officer," said Yongke Xue, Chairman of the Board of the Company. "A key pillar of the Company's strategy is bringing onboard top leadership to accelerate our

blockchain based e-commerce, digital asset technology and applications, and financial technology and service business. ***Mr. Huang brings the right mix of talent, experience and success to lead the Company's next stage of growth***."

"I'm thrilled to join Future FinTech's leadership team at a time when blockchain and traditional industry are intersecting to create breakthroughs," said Shanchun Huang. "I look forward to working with the team to execute on our transformational growth strategy." [1]

32.     This statement was materially false and misleading at the time it was made because it extolled Defendant Huang's experiences while failing to disclose that he was manipulating the Company's stock at that time.

33.     On October 28, 2020, the Company filed a proxy statement on Form DEF 14A with the SEC (the "October 2020 Proxy Statement"). The October 2020 Proxy Statement was solicited by Defendants Huang, Lau, Zhao, and Fuyou Li and solicited the approval of, *inter alia,* the re-election of these defendants to the Board.

34.     Further, the October 2020 Proxy Statement touted Defendant Huang's role in the Company stating in part "The Board believes that Mr. Huang's significant experience in investment and management will be an asset to the Company and the Board."

35.     On November 4, 2020, the Company filed with the SEC its amended annual report on Form 10-K/A for the period ending December 31, 2019 (the "2019 Annual Report"). Defendants Huang, Chen, Zhao, Lau and Fuyou Li signed the 2019 Annual Report. Attached to the 2019 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Huang and Chen attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

---

[1] All emphasis in this complaint is added, unless otherwise noted.

36.    The 2019 Annual Report contained the following risk disclosure regarding the possibility of the Company being delisted from the NASDAQ:

***In recent years, our Common Stock has been in danger of being delisted from the NASDAQ Stock Market ("NASDAQ").***

On each of April 20, 2016, May 24, 2016 and August 17, 2016, the Company received a notification letter from the staff of the Listing Qualifications Department of NASDAQ (the "Staff") indicating that the Company was not in compliance with NASDAQ's continued listing requirements because the Company was not in compliance with the NASDAQ Listing Rule 5250(c)(1) (the "Rule") with respect to certain of its annual and quarterly reports.

On October 12, 2016, the Company received a delisting determination letter (the "Determination Letter") from the Staff notifying the Company that because the Company had not filed its Annual Report on Form 10-K for the fiscal year ended December 31, 2015 (the "Form 10K") and its Quarterly Reports on Form 10-Q for the quarterly periods ended March 31, 2016 and June 30, 2016, (together, the "Reports") by October 11, 2016, the deadline by which the Company was to file all Reports in order to regain compliance with the Rule, the Company's common stock was subject to delisting from the NASDAQ Global Market.

On October 19, 2016, the Company requested a hearing before the NASDAQ Hearings Panel (the "Panel") under Listing Rule 5815(a) to appeal the delisting determination from the Staff. On November 2, 2016, the Company was granted an extended stay as to the suspension of the Company's shares from trading by the Panel until the Company's scheduled hearing before the Panel on December 15, 2016 and issuance of a final Panel decision. Following a hearing, the Panel required that the Company regain compliance by January 31, 2017. By letter dated February 2, 2017, the Panel notified the Company that (i) the Company had regained compliance, (ii) the Company's Common Stock would continue to be listed on the NASDAQ Global Market, and (iii) the Panel was closing the matter.

On December 1, 2017, the Company received written notice from NASDAQ stating that the Company was not in compliance with the requirement of the minimum Market Value of Publicly Held Shares ("MVPHS") of $5,000,000 for continued listing on the NASDAQ Global Market, as set forth in NASDAQ Listing Rule 5450(b)(1)(C). The Company received notice that it had regained compliance on January 4, 2018.

On November 26, 2018, the Company received written notice from the NASDAQ Stock Market stating that the Company was not in compliance with the requirement of maintaining a minimum of $10,000,000 in stockholders' equity for continued listing on the NASDAQ Global Market, as set forth in NASDAQ Listing Rule 5450(b)(1)(A). Alternatively, the Company could consider applying to transfer the

Company's securities to the NASDAQ Capital Market, which has a minimum stockholders' equity requirement of $2,500,000.

On December 28, 2018, the Company received confirmation from the Nasdaq Stock Market that its application to transfer the listing of its common stock from the Nasdaq Global Market to the Nasdaq Capital Market (the "Capital Market") had been approved. The Company's common stock began trading on the Capital Market on December 31, 2018.

On February 28, 2019, the Company received a letter from NASDAQ notifying the Company that, because the closing bid price for the Company's common stock listed on NASDAQ was below $1.00 for 30 consecutive trading days, the Company no longer met the minimum bid price requirement for continued listing on NASDAQ under NASDAQ Marketplace Rule 5550(a)(2). On May 7, 2019, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On April 17, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2018 (the "2018 10-K").

On May 21, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2019.

On August 20, 2019, the Company received a notification letter from the NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2019.

On October 16, 2019, the Company received a letter from the NASDAQ Listing Qualifications Staff notifying the Company that it has regained compliance with NASDAQ's periodic filing requirements for continued listing on the Nasdaq Capital Market. The letter noted that as a result of the September 3, 2019 filing of the 2018 10-K and the September 30, 2019 filing of the Forms 10-Q for the periods ended March 31, and June 30, 2019 with the Securities and Exchange Commission, the Company has regained compliance with Listing Rule 5250(c)(1) and the matter is now closed.

On September 4, 2019, the Company received written notice from the NASDAQ stating that the Company did not meet the requirement of maintaining a minimum of $2,500,000 in stockholders' equity for continued listing on the NASDAQ Capital Market, as set forth in NASDAQ Listing Rule 5550(b)(1), the Company also does

not meet the alternative of market value of listed securities of $35 million under NASDAQ Listing Rule 5550(b)(2) or net income from continuing operations of $500,000 in the most recently completed fiscal year or in two of the last three most recently completed fiscal years under NASDAQ Listing Rule 5550(b)(3), and the Company is no longer in compliance with the NASDAQ Listing Rules. On March 18, 2020, the Company received written notice form NASDAQ stating that the Company complies with the Listing Rule 5550(b)(1). However, as noted in NASDAQ letter dated December 17, 2019, if the Company fails to evidence such compliance upon filing its Form 10-K for the fiscal year ended December 31, 2019, it may be subject to delisting. At that time, NASDAQ will provide written notification to the Company, which may then appeal Staff's determination to a Hearings Panel.

37.    This statement was materially false and misleading because it omitted the unlawful measures, specifically, manipulative trading, that Defendant Huang undertook in order to prop up the price of the Company's stock above $1 per share, in order to prevent a delisting of the Company's stock from the NASDAQ exchange.

38.    On March 12, 2021, the Company and Defendant Huang filed with the SEC an initial insider holdings report on Form 3 (the "Holdings Report"), which had a reporting date of March 4, 2020, the day Defendant Huang became Future FinTech's CEO. Defendant Huang signed the Holdings Report, which, as demonstrated herein, stated that Huang did not hold any Future FinTech shares:

SEC Form 3

| FORM 3 | UNITED STATES SECURITIES AND EXCHANGE COMMISSION | OMB APPROVAL |
|---|---|---|

**FORM 3**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

**INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES**

| OMB APPROVAL |
|---|
| OMB Number: 3235-0104 |
| Estimated average burden hours per response: 0.5 |

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* <br> Huang Shanchun <br><br> (Last)        (First)        (Middle) <br> 1177 AVENUE OF THE AMERICAS, SUITE 5100 <br><br> (Street) <br> NEW YORK    NY    10036 <br> (City)    (State)    (Zip) | 2. Date of Event Requiring Statement (Month/Day/Year) <br> 03-04-2020 | 3. Issuer Name **and** Ticker or Trading Symbol <br> Future FinTech Group Inc. [ FTFT ] |
|---|---|---|
| | 4. Relationship of Reporting Person(s) to Issuer (Check all applicable) <br>     Director        10% Owner <br> X   Officer (give title below)    Other (specify below) <br><br> Chief Executive Officer | 5. If Amendment, Date of Original Filed (Month/Day/Year) <br><br> 6. Individual or Joint/Group Filing (Check Applicable Line) <br> X   Form filed by One Reporting Person <br>     Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Beneficially Owned**

| 1. Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|
| | | | |

**Table II - Derivative Securities Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 4) | 2. Date Exercisable and Expiration Date (Month/Day/Year) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

Explanation of Responses:
No securities are beneficially owned.

/s/ Shanchun Huang       03-12-2021
** Signature of Reporting Person    Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, **see** Instruction 5 (b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations **See** 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, **see** Instruction 6 for procedure.
Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

39.    The Holdings Report was materially false and misleading because it failed to disclose that Defendant Huang had owned Future FinTech stock at the time he became the Company's CEO.

40.    On April 15, 2021, the Company filed with the SEC its annual report on Form 10-K for the period ending December 31, 2020 (the "2020 Annual Report"). Defendants Huang, Yi, Zhao, Lau, and Fuyou Li signed the 2020 Annual Report. Attached to the 2020 Annual Report were SOX certifications signed by Defendants Huang and Yi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

41.    The 2020 Annual Report contained the following risk disclosure regarding the possibility of the Company being delisted from the NASDAQ:

*In recent years, our Common Stock has been in danger of being delisted from the NASDAQ Stock Market ("NASDAQ").*

On February 28, 2019, the Company received a letter from NASDAQ notifying the Company that, because the closing bid price for the Company's common stock listed on NASDAQ was below $1.00 for 30 consecutive trading days, the Company no longer met the minimum bid price requirement for continued listing on NASDAQ under NASDAQ Marketplace Rule 5550(a)(2). On May 7, 2019, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On April 17, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2018 (the "2018 10-K"). On May 21, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2019. On August 20, 2019, the Company received a notification letter from the NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2019.

On October 16, 2019, the Company received a letter from the NASDAQ notifying the Company that it has regained compliance with NASDAQ's periodic filing requirements for continued listing on the Nasdaq Capital Market. The letter noted that as a result of the September 3, 2019 filing of the Form 10-K for the year ended on December 31, 2018 and the September 30, 2019 filing of the Forms 10Q for the periods ended March 31, and June 30, 2019 with the Securities and Exchange Commission, the Company has regained compliance with Listing Rule 5250(c)(1) and the matter is now closed.

On September 4, 2019, the Company received written notice from the NASDAQ stating that the Company did not meet the requirement of maintaining a minimum of $2,500,000 in stockholders' equity for continued listing on the NASDAQ Capital Market, as set forth in NASDAQ Listing Rule 5550(b)(1), the Company also does not meet the alternative of market value of listed securities of $35 million under NASDAQ Listing Rule 5550(b)(2) or net income from continuing operations of $500,000 in the most recently completed fiscal year or in two of the last three most recently completed fiscal years under NASDAQ Listing Rule 5550(b)(3), and the Company is no longer in compliance with the NASDAQ Listing Rules. On March 18, 2020, the Company received written notice form NASDAQ stating that the Company complies with the Listing Rule 5550(b)(1).

On November 4, 2019, the Company received a letter from the Nasdaq notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company

no longer meets the minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share. On April 14, 2020, the Company received a written notification from the Nasdaq indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

42.     This statement was materially false and misleading because it omitted the unlawful measures, specifically, manipulative trading, that Defendant Huang had previously engaged in to prop up the price of the Company's stock above $1 per share, in order to prevent a delisting of the Company's stock from the NASDAQ exchange.

43.     On October 19, 2021, the Company filed a proxy statement on Form DEF 14A with the SEC (the "2021 Proxy Statement"). The 2021 Proxy Statement was solicited by Defendants Huang, Lau, Zhao, Fuyou Li, and Ying Li and solicited the approval of, *inter alia,* the re-election of these defendants to the Board.

44.     Further, the 2021 Proxy Statement touted Defendant Huang's role in the Company stating in part "The Board believes that Mr. Huang's significant experience in investment and management will be an asset to the Company and the Board."

45.     On October 27, 2022, the Company filed a proxy statement on Form DEF 14A with the SEC (the "2022 Proxy Statement"). The 2022 Proxy Statement was solicited by Defendants Huang, Lau, Zhao, Fuyou Li, and Ying Li and solicited the approval of, *inter alia,* the re-election of these defendants to the Board.

46.     Further, the 2022 Proxy Statement touted Defendant Huang's role in the Company stating in part "The Board believes that Mr. Huang's significant experience in investment and management will be an asset to the Company and the Board."

47.     On March 22, 2023, the Company filed with the SEC its amended annual report on Form 10-K/A for the period ending December 31, 2021 (the "2021 Annual Report"). Defendants

Huang, Yi, Zhao, Lau, Fuyou Li, and Ying Li signed the 2021 Annual Report. Attached to the 2021 Annual Report were SOX certifications signed by Defendants Huang and Yi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

48.    The 2021 Annual Report contained the following risk disclosure regarding the possibility of the Company being delisted from the NASDAQ:

***In recent years, our Common Stock has been in danger of being delisted from the NASDAQ Stock Market ("NASDAQ").***

On February 28, 2019, the Company received a letter from NASDAQ notifying the Company that, because the closing bid price for the Company's common stock listed on NASDAQ was below $1.00 for 30 consecutive trading days, the Company no longer met the minimum bid price requirement for continued listing on NASDAQ under NASDAQ Marketplace Rule 5550(a)(2). On May 7, 2019, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On April 17, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2018 (the "2018 10-K"). On May 21, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2019. On August 20, 2019, the Company received a notification letter from the NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2019.

On October 16, 2019, the Company received a letter from the NASDAQ notifying the Company that it has regained compliance with NASDAQ's periodic filing requirements for continued listing on the Nasdaq Capital Market. The letter noted that as a result of the September 3, 2019 filing of the Form 10-K for the year ended on December 31, 2018 and the September 30, 2019 filing of the Forms 10Q for the periods ended March 31, and June 30, 2019 with the Securities and Exchange Commission, the Company has regained compliance with Listing Rule 5250(c)(1) and the matter is now closed.

On September 4, 2019, the Company received written notice from the NASDAQ stating that the Company did not meet the requirement of maintaining a minimum of $2,500,000 in stockholders' equity for continued listing on the NASDAQ Capital Market, as set forth in NASDAQ Listing Rule 5550(b)(1), the Company also does not meet the alternative of market value of listed securities of $35 million under NASDAQ Listing Rule 5550(b)(2) or net income from continuing operations of $500,000 in the most recently completed fiscal year or in two of the last three most recently completed fiscal years under NASDAQ Listing Rule 5550(b)(3), and the Company is no longer in compliance with the NASDAQ Listing Rules. On March 18, 2020, the Company received written notice form NASDAQ stating that the Company complies with the Listing Rule 5550(b)(1).

On November 4, 2019, the Company received a letter from the Nasdaq notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company no longer meets the minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share. On April 14, 2020, the Company received a written notification from the Nasdaq indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On March 1, 2022, Future FinTech Group Inc. (the "Company") received a letter from the Nasdaq Stock Market ("Nasdaq") notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company no longer meets the minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share (the "Minimum Bid Price Requirement"). The notification has no immediate effect on the listing of the Company's common stock. In accordance with Nasdaq Marketplace Rule 5810(c)(3)(A), the Company has a period of 180 calendar days from the date of notification, until August 29, 2022 (the "Compliance Period"), to regain compliance with the Minimum Bid Price Requirement. If at any time before the expiration of the Compliance Period the bid price of the Company's common stock closes at or above $1.00 per share for a minimum of 10 consecutive business days, Nasdaq will provide written notification that the Company has achieved compliance with the Minimum Bid Price Requirement. If the Company does not regain compliance by the end of the Compliance Period, the Company may be eligible for an additional 180 calendar day period to regain compliance. To qualify, the Company will be required to meet the continued listing requirement for market value of publicly held shares and all other initial listing standards for The Nasdaq Capital Market, with the exception of the bid price requirement, and will need to provide written notice of its intention to cure the deficiency during the second compliance period by effecting a reverse stock split, if necessary. However, if it appears to Nasdaq that the Company will not be able to cure the deficiency, or if the Company is otherwise not eligible, Nasdaq will provide notice that the Company's securities will be subject to delisting. The Company intends to continue

actively monitoring the bid price for its common stock between now and the expiration of the Compliance Period and will consider all available options to resolve the deficiency and regain compliance with the Minimum Bid Price Requirement.

49.     This statement was materially false and misleading because it omitted the unlawful measures, specifically, manipulative trading, that Defendant Huang had previously engaged in to prop up the price of the Company's stock above $1 per share, in order to prevent a delisting of the Company's stock from the NASDAQ exchange.

50.     On April 19, 2023, the Company filed with the SEC its annual report on Form 10-K for the period ending December 31, 2022 (the "2022 Annual Report"). Defendants Huang, Yi, Zhao, Lau, Fuyou Li, and Ying Li signed the 2022 Annual Report. Attached to the 2022 Annual Report were SOX certifications signed by Defendants Huang and Yi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

51.     The 2022 Annual Report contained the following risk disclosure regarding legal risks:

> ***If we become subject to additional scrutiny, criticism and negative publicity involving U.S.-listed China-based companies, we may have to expend significant resources to investigate and resolve the matter which could harm our business operations, any offering and our reputation and could result in a loss of your investment in our shares, especially if such matter cannot be addressed and resolved favorably.***
>
> Recently, U.S. public companies that have substantially operations in China have been the subject of intense scrutiny, criticism and negative publicity by investors, financial commentators and regulatory agencies. ***Much of the scrutiny, criticism and negative publicity has centered around financial and accounting irregularities, a lack of effective internal controls over financial accounting, inadequate corporate governance policies or a lack of adherence thereto and, in some cases, allegations of fraud.*** As a result of the scrutiny, criticism and negative publicity, the publicly traded stock of many U.S.-listed China-based companies has decreased in value and, in some cases, has become virtually worthless. ***Many of these companies have been subject to shareholder lawsuits and SEC enforcement***

*actions and have conducted internal and external investigations into the allegations.*

The Company has received subpoenas from the SEC's Division of Enforcement requiring us to produce documents and detailed information relating to, among other things, the Company's accounting procedures and treatment, management oversight, and the sale of HeDeTang Holdings (HK) Ltd. to New Continent International Co., Ltd. The Company has provided responsive documents and information and will continue to cooperate with regulator and produce requested documents and information. ***It is not clear what effect this sector-wide scrutiny, criticism and negative publicity will have on us and our business. If we become the subject of any unfavorable allegations, whether such allegations are proven to be true or untrue, we will have to expend significant resources to investigate such allegations and/or defend our company.*** This situation may be a major distraction to our management. ***If such allegations are not proven to be groundless, our business operations will be severely hindered and your investment in our shares could be rendered worthless.***

52.    This statement was materially false and misleading because it understated the level of regulatory and compliance risk Future FinTech faced particularly given that its current CEO had manipulated the price of the Company's stock.

53.    The 2022 Annual Report contained the following risk disclosure regarding the possibility of the Company being delisted from the NASDAQ:

***In recent years, our Common Stock has been in danger of being delisted from the NASDAQ Stock Market ("NASDAQ").***

Our common stock is currently listed on the Nasdaq Capital Market. The NASDAQ Stock Market LLC has requirements that a company must meet in order to remain listed on NASDAQ, for example, NASDAQ rules require us to maintain a minimum bid price of $1.00 per share of our common stock. We may be unable to meet NASDAQ listing requirements, including minimum bid price, minimum levels of stockholders' equity or market values of our common stock in which case, our common stock could be delisted. If our common stock were to be delisted, the liquidity of our common stock would be materially adversely affected and the market price of our common stock could decrease.

On February 28, 2019, the Company received a letter from NASDAQ notifying the Company that, because the closing bid price for the Company's common stock listed on NASDAQ was below $1.00 for 30 consecutive trading days, the Company no longer met the minimum bid price requirement for continued listing on NASDAQ under NASDAQ Marketplace Rule 5550(a)(2). On May 7, 2019, the

Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On April 17, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2018 (the "2018 10-K"). On May 21, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2019. On August 20, 2019, the Company received a notification letter from the NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2019.

On October 16, 2019, the Company received a letter from the NASDAQ notifying the Company that it has regained compliance with NASDAQ's periodic filing requirements for continued listing on the Nasdaq Capital Market. The letter noted that as a result of the September 3, 2019 filing of the Form 10-K for the year ended on December 31, 2018 and the September 30, 2019 filing of the Forms 10Q for the periods ended March 31, and June 30, 2019 with the Securities and Exchange Commission, the Company has regained compliance with Listing Rule 5250(c)(1) and the matter is now closed.

On September 4, 2019, the Company received written notice from the NASDAQ stating that the Company did not meet the requirement of maintaining a minimum of $2,500,000 in stockholders' equity for continued listing on the NASDAQ Capital Market, as set forth in NASDAQ Listing Rule 5550(b)(1), the Company also does not meet the alternative of market value of listed securities of $35 million under NASDAQ Listing Rule 5550(b)(2) or net income from continuing operations of $500,000 in the most recently completed fiscal year or in two of the last three most recently completed fiscal years under NASDAQ Listing Rule 5550(b)(3), and the Company is no longer in compliance with the NASDAQ Listing Rules. On March 18, 2020, the Company received written notice form NASDAQ stating that the Company complies with the Listing Rule 5550(b)(1).

On November 4, 2019, the Company received a letter from the Nasdaq notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company no longer meets the minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share. On April 14, 2020, the Company received a written notification from the Nasdaq indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On March 1, 2022, the Company received a letter from the Nasdaq Stock Market ("Nasdaq") notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company no longer meets the minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share (the "Minimum Bid Price Requirement"). The Company has a period of 180 calendar days from the date of notification, until August 29, 2022 (the "Compliance Period"), to regain compliance with the Minimum Bid Price Requirement. On August 30, 2022, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff (the "Staff") indicating that the Company has been granted an additional 180 calendar day period or until February 27, 2023, to regain compliance with the $1.00 minimum closing bid price requirement for continued listing on the NASDAQ Capital Market pursuant to NASDAQ Listing Rule. On January 26, 2023, the Company filed with the Florida Secretary of State's office Articles of Amendment (the "Amendment") to amend its Second Amended and Restated Articles of Incorporation, as amended ("Articles of Incorporation"). As a result of the Amendment, the Company has authorized and approved a 1-for-5 reverse stock split of the Company's authorized shares of common stock from 300,000,000 shares to 60,000,000 shares, accompanied by a corresponding decrease in the Company's issued and outstanding shares of common stock (the "Reverse Stock Split"). The common stock will continue to be $0.001 par value. The Company's shares of common stock began to trade on the NASDAQ Stock Market on the post-Reverse Stock Split basis under the symbol "FTFT" on February 1, 2023. On February 15, 2023, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement for continued listing on the NASDAQ Capital Market pursuant to NASDAQ Listing Rule 5550(a)(2) and that the matter is now closed.

54.     On October 13, 2023, the Company filed a proxy statement on Form DEF 14A with the SEC (the "2023 Proxy Statement"). The 2023 Proxy Statement was solicited by Defendants Huang, Lau, Zhao, Fuyou Li and Ying Li and solicited the approval of, *inter alia,* the re-election of these defendants to the Board.

55.     Further, the 2023 Proxy Statement touted Defendant Huang's role in the Company stating in part "The Board believes that Mr. Huang's significant experience in investment and management will be an asset to the Company and the Board."

56.    These statements were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, the Individual Defendants caused the Company to make false and/or misleading statements and/or failed to disclose that: (1) Company officers and directors, including Huang, unlawfully manipulated the price of Future FinTech stock; (2) Defendant Huang caused Future FinTech to lie to the SEC about the nature of Defendant Huang's ownership of Future FinTech stock; (3) Future FinTech understated its exposure to governmental legal proceedings; (4) Future FinTech failed to disclose the unlawful measures Defendant Huang took to prop up the price of the Company's stock; and (5) as a result, the Individual Defendants caused the Company to issue statements about its business, operations, and prospects that were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

57.    On January 11, 2024, around or after market close, the SEC posted a press release on its website entitled "SEC Charges Future FinTech CEO Shanchun Huang With Fraud and Disclosure Failures." (The "SEC Announcement"). The SEC Announcement stated the following:

> The [SEC] today charged Shanchun Huang with manipulative trading in the stock of Future FinTech Group Inc., using an offshore account shortly before he became Future FinTech's CEO in 2020. The SEC also charged Huang with failing to disclose his beneficial ownership of Future FinTech stock as well as transactions in such stock.

58.    Attached to the SEC Announcement was a complaint the SEC filed against Defendant Huang (the "SEC Complaint"), in the action styled as *Securities and Exchange Commission v. Huang*, Case No. 1:24-cv-00238-JHR (S.D.N.Y.). The SEC Complaint stated that Defendant Huang "manipulated the stock price of Future FinTech by buying hundreds of

thousands of Future FinTech shares to artificially increase the company's stock price shortly before and after he became CEO in March 2020."

59.     Further, the SEC Complaint stated that "[t]o induce investors to purchase Future FinTech stock, Huang sought to inflate the share price of Future FinTech to avoid the company being delisted by Nasdaq[.]" The reason that Future FinTech faced a delisting of its stock by Nasdaq "its failure to maintain a minimum price of $1 per share, which would have made Future FinTech stock less attractive."

60.     The SEC Complaint continued by stating the following about the volume and nature of Defendant Huang's manipulative trades:

> From in or about January 2020 through April 2020 (the "Relevant Period"), ***using a securities account maintained at an offshore financial institution, Huang engaged in manipulative trades of Future FinTech stock.*** Huang repeatedly traded at a volume so large it constituted a high percentage of the daily volume of Future FinTech stock transactions, placed multiple buy orders in short timeframes, placed limit buy orders (orders to buy the stock at a specified price or better) with escalating limit prices from one order to the next, and typically purchased Future FinTech stock at the top of the National Best Bid and Offer ("NBBO") 1 spread, trades that generally would not make economic sense for an investor who sought to buy the stock at the lowest available price.

61.     The SEC Complaint noted that "[H]uang's trades were intended to, and at times did, push the Future FinTech stock price upward."

62.     In addition, the SEC Complaint noted that "upon becoming [Future FinTech's] CEO] in March 2020, ***Huang repeatedly failed to make required public filings with the Commission about his beneficial ownership of Future FinTech stock and his Future FinTech stock transactions.***"

63.     By March 2021, Defendant Huang had sold all of his Future FinTech stock. At this time, he filed an Initial Statement of Beneficial Ownership, which the SEC Complaint noted

"failed to state that Huang owned Future FinTech stock at the time he became CEO in March 2020 until his final shares were sold in March 2021."

64.     Finally, the SEC Complaint noted that "***Huang has never filed any forms with the Commission disclosing his ownership of or transactions in Future FinTech stock from January 2020 through March 2021.***"

65.     On this news, the price of Future FinTech's stock declined by $0.27, or more than 20%, to close at $1.02 on January 12, 2024.

## DAMAGES TO FUTURE FINTECH

66.     As a direct and proximate result of the Individual Defendants' misconduct, Future FinTech has expended and will continue to expend many millions of dollars.

67.     Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution or to satisfy a judgment associated with the Securities Class Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

68.     Such expenditures will also include costs incurred in any internal investigation pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

69.     As a direct and proximate result of the Individual Defendants' conduct, Future FinTech has suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's actions and misrepresentations and the Individual Defendants' breaches of fiduciary duties.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

70.     Plaintiff brings this action derivatively in the right of and for the benefit of Future FinTech to redress injuries suffered, and to be suffered, as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, violations of federal law, and other wrongful conduct as alleged herein.

71.     Future FinTech is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

72.     Plaintiff is an owner of Future FinTech stock and has been a continuous shareholder of Company stock at all relevant times.

73.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

74.     A pre-suit demand on the Board is futile and therefore, excused. At the time this suit was filed, the Board consisted of the following five individuals: Defendants Huang, Lau, Fuyou Li, Ying Li, and Zhao (the "Director Defendants"). Plaintiff is required to show that three of the current Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

75.     Each of the Director Defendants face a likelihood of liability in this action because they caused and/or permitted the Company to make false and misleading statements and omissions concerning the information described herein. Because of their advisory, managerial, and directorial positions within the Company, the Director Defendants had knowledge of material, non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

76.     The Director Defendants either knew or should have known of the false and

misleading statements and omissions that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that misconduct.

77.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and, with gross negligence, disregarded the wrongs complained of herein and are therefore not disinterested parties.

78.     Each of the Director Defendants signed and/or authorized the false statements to be disseminated directly to the public and made available and distributed to shareholders, signed and/or authorized the issuance of various false and misleading statements and omissions, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

79.     Each Director Defendant permitted the unlawful manipulation of Future FinTech stock.

80.     Additional reasons that demand on Defendant Huang is futile follow. Defendant Huang has served as the Company's CEO and as a director since March 2020. Thus, as the Company admits in the 2023 Proxy Statement, Defendant Huang is a non-independent director. The Company provides Defendant Huang with his principal occupation for which he receives significant compensation as detailed above. In addition, Defendant Huang directly participated in the scheme to manipulate the Company's stock and deceive the SEC. As a result of his misconduct, the SEC initiated a civil action against Defendant Huang and thus he faces liability. Defendant Huang also signed the 2019, 2020, 2021, and 2022 Annual Reports, as well as the Holdings Report, and solicited the 2020, 2021, 2022, and 2023 Proxy Statements, all of which contained false and misleading statements. Therefore, as a trusted Company director, he consciously disregarded his duties to protect the Company. Defendant Huang is a defendant in the Securities Class Action and

thus, faces potential liability. For these reasons, Defendant Huang breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and, thus, demand upon him is futile and, therefore, excused.

81.    Additional reasons that demand on Defendant Lau is futile follow. Defendant Lau has served as a Company director since December 2014. The Company provides Defendant Lau with compensation as detailed above. Defendant Lau signed the 2019, 2020, 2021, and 2022 Annual Reports and solicited the 2020, 2021, 2022, and 2023 Proxy Statements, all of which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect the Company, particularly from stock manipulation. For these reasons, Defendant Lau breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and, thus, demand upon him is futile and, therefore, excused.

82.    Additional reasons that demand on Defendant Fuyou Li is futile follow. Defendant Fuyou Li has served as a Company director since May 2015. The Company provides Defendant Fuyou Li with compensation as detailed above. Defendant Fuyou Li signed the 2019, 2020, 2021, and 2022 Annual Reports and solicited the 2020, 2021, 2022, and 2023 Proxy Statements, all of which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect the Company, particularly from stock manipulation. For these reasons, Defendant Fuyou Li breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and, thus, demand upon him is futile and, therefore, excused.

83.     Additional reasons that demand on Defendant Ying Li is futile follow. Defendant Ying Li has served as a Company director since June 2021. Defendant Ying Li signed the 2021 and 2022 Annual Reports and solicited the 2021, 2022, and 2023 Proxy Statements, all of which contained false and misleading statements. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded her duties to protect the Company, particularly from stock manipulation. Further, as the Company admits in the 2023 Proxy Statement, Defendant Ying Li is a non-independent director. For these reasons, Defendant Ying Li breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and, thus, demand upon her is futile and, therefore, excused.

84.     Additional reasons that demand on Defendant Zhao is futile follow. Defendant Zhao has served as a Company director since July 2020. The Company provides Defendant Zhao with compensation as detailed above. Defendant Zhao signed the 2019, 2020, and 2021 Annual Reports and solicited the 2020, 2021, 2022, and 2023 Proxy Statements, all of which contained false and misleading statements. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect the Company, particularly from stock manipulation. For these reasons, Defendant Zhao breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and, thus, demand upon him is futile and, therefore, excused.

85.     Defendants Lau, Fuyou Li, and Zhao serve as members of the Audit Committee and/or served as members of the Audit Committee during the Relevant Period and, pursuant to the Audit Committee Charter, were specifically charged with, *inter alia*, the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial

reporting and public disclosure requirements. Throughout the Relevant Period, however, these Defendants breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices and the adequacy of the Company's internal controls as alleged above. Therefore, Defendants Lau, Fuyou Li, and Zhao cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

86.    The Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Director Defendants to also adhere to the Company's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

87.    The Director Defendants received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have benefitted from the wrongs alleged herein and have engaged therein to preserve their positions of control and the prerequisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

88.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim

exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

89.     Publicly traded companies, such as Future FinTech, typically carry director and officer liability insurance from which the Company could potentially recover some or all of its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover the Company's damages. If no such insurance is carried, then the Director Defendants will not cause the Company to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event.

90.     Accordingly, each of the Director Defendants, and at least a majority of them, cannot reasonably consider a demand with the requisite disinterestedness and independence. Indeed, any demand upon the Director Defendants is futile and, therefore, excused.

## **COUNT I**

**Against the Individual Defendants for Violations of
Section 10(b) of the Exchange Act and Rule 10b-5**

91.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

92.     The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

93.     The Individual Defendants, individual and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or

deliberately disregarded to be misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

94.    The Individual Defendants employed devices, schemes and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Future FinTech not misleading.

95.    The Individual Defendants, as top executives and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by Future FinTech.

96.    The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and omissions disseminated to the public.

97.    As a result of the foregoing, the market price of Future FinTech common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, Plaintiff relied on the statements described above and/or the integrity of the market price of Future

FinTech common stock in purchasing Future FinTech common stock at prices that were artificially inflated as a result of the false and misleading statements and was damaged thereby.

98.    By virtue of the foregoing, the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

99.    Plaintiff on behalf of Future FinTech has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Violations
### of Section 20(a) of the Exchange Act

100.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

101.    The Individual Defendants, by virtue of their positions with Future FinTech and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Future FinTech and each of its officers and directors who made the false and misleading statements alleged herein within the meaning of Section 20(a) of the Exchange Act. The Individual Defendants had the power and influence and exercised the same to cause Future FinTech to engage in the illegal conduct and practices complained of herein.

102.    Plaintiff on behalf of Future FinTech has no adequate remedy at law.

## COUNT III

### Against Defendants Huang, Chen, and Yi for Contribution Under
### Sections 10(b) and 21D of the Exchange Act

103.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

104.    The conduct of Defendants Huang, Chen, and Yi as described herein has exposed the Company to significant liability under various federal securities laws by their misconduct.

105.   Future FinTech and Defendants Huang, Chen, and Yi are named as defendants in the related Securities Class Action that alleges and asserts claims arising under the federal securities laws. Future FinTech is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.

106.   If Future FinTech is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Defendants Huang, Chen, and Yi as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. Future FinTech is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

107.   As officers and directors, Defendants Huang, Chen, and Yi had the power or ability to, and did, control or influence, either directly or indirectly, Future FinTech's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

108.   The Individual Defendants are liable under §21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

109.   Defendants Huang, Chen, and Yi have damaged the Company and are liable to the Company for contribution.

110.   As such, Future FinTech is entitled to receive all appropriate contribution or indemnification from Defendants Huang, Chen, and Yi.

## COUNT IV

**Against the Director Defendants for Violations of
Section 14(a) of the Securities Exchange Act of 1934**

111.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

112.     Defendants Huang, Lau, Fuyou Li, and Zhao solicited the 2020, 2021, 2022, and 2023 Proxy Statements containing materially false and misleading statements and/or omissions, while Defendant Ying Li solicited the 2021, 2022, and 2023 Proxy Statements.

113.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

114.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

115.     Under the direction and watch of the Director Defendants, the Proxy Statements, among other things omitted and/or concealed the manipulation of Future FinTech's stock.

116.     Moreover, the Proxy Statement was false and misleading when it discussed Defendant Huang's role and benefit to the Company as a director.

117.    In the exercise of reasonable care, the Director Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to shareholders in voting on the matters set forth for shareholder determination in the Proxy Statements, including but not limited to, election of directors and approval of executive compensation.

118.    The misrepresentations and omissions set forth herein were material to shareholders in voting on the proposals in the Proxy Statements who would not have approved, *inter alia*, the re-election of the Director Defendants to the Board.

119.    As a result of the Director Defendants causing the Proxy Statements to be false and misleading, Company shareholders approved the proposals set forth therein, including, *inter alia*, the re-election of the Director Defendants.

120.    The Company was damaged as a result of the Director Defendants' material misrepresentations and omissions in the Proxy Statements.

## <u>COUNT V</u>

### Against the Individual Defendants for Breach of Fiduciary Duties

121.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

122.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Future FinTech's business and affairs.

123.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

124.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Future FinTech.

125.    In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

126.    In further breach of their fiduciary duties owed to Future FinTech, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose that: (1) Defendant Huang manipulated the price of Future FinTech stock; (2) Defendant Huang and Future FinTech lied to the SEC about the nature of Defendant Huang's ownership of Future FinTech stock; (3) Future FinTech understated its legal risk; and (4) Future FinTech did not disclose the unlawful measures Defendant Huang took to prop up the price of its stock.

127.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

128.    The Individual Defendants failed to correct and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and

omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

129.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

130.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

131.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Future FinTech has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

132.    Plaintiff on behalf of Future FinTech has no adequate remedy at law.

<u>**COUNT VI**</u>

**Against the Individual Defendants for Unjust Enrichment**

133.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

134.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Future FinTech.

135.    The Individual Defendants either benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from Future FinTech that was tied to the performance or artificially-inflated valuation of Future FinTech or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

136.    Plaintiff, as a shareholder and a representative of Future FinTech, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

137.    Plaintiff on behalf of Future FinTech has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock

sale proceeds, and imposing a constructive trust thereon;

        C.      Awarding punitive damages;

        D.      Awarding costs and disbursements of this action, including reasonable attorneys'

fees, accountants' and experts' fees, costs, and expenses; and

        E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: May 31, 2024              Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

<u>/s/ Laurence M. Rosen</u>
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, NJ  07102
Tel: (973) 313-1887
Fax: (973) 833-0399 Email:
lrosen@rosenlegal.com


*Counsel for Plaintiff*

41

## VERIFICATION

     I, Jeff Janzen am a plaintiff in the within action. I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing.  To those allegations of which I have personal knowledge, I believe those allegations to be true.  As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 5/31/2024

DocuSign by:

Jeff Janzen